## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. 11-cr-146-01-SM** |
| **JOHN ALLEN WRIGHT,** | ) | |
| | ) | |
| **Defendant** | ) | |

### GOVERNMENT'S SENTENCING MEMORANDUM AND OBJECTION
### TO DEFENDANT'S MOTION FOR DEPARTURE OR VARIANCE

The United States of America, by and through John P. Kacavas, United States Attorney

for the District of New Hampshire, hereby submits this memorandum in support of its

recommended 160 year term of incarceration, representing maximum thirty (30) year terms of

incarceration imposed on each of the five convictions for sexual exploitation of children, and a

maximum ten (10) year term of incarceration imposed on the conviction for possession of child

pornography, each term of incarceration to be served consecutively.  In support of its

recommendation, the United States submits the following:

### INTRODUCTION

On September 11, 2012, the Defendant pled guilty, without the benefit of a plea

agreement, to all charges contained in a six-count Indictment charging him with five (5) counts

of "Sexual exploitation of children" in violation of 18 U.S.C. §2251(a), and one (1) count of

"Possession of child pornography" in violation of 18 U.S.C. §2252A(a)(5)(B).  The gravamen of

the sexual exploitation charges (Counts I through V) is that the Defendant used and coerced three

developmentally disabled young boys riding aboard his school bus to engage in sexually explicit

conduct that he surreptitiously recorded.[1]  Considering the nature and circumstances of these offenses – including the tender ages of the victims, their concomitant afflictions and vulnerabilities, and the predatory character of the crimes – the Court would be hard-pressed to fashion a commensurate sentence that is either sufficient or greater than necessary to achieve the well-established goals of sentencing.

## FACTS

Beginning in February of 2008, the Defendant was employed as a school bus driver for "The Provider Enterprises, Inc." (hereinafter, "Provider"), an entity that contracts with numerous school districts to transport students with special needs.  According to its website, Provider is "the largest company in New Hampshire dedicated to serving children with special needs."  The Defendant was assigned to drive various routes, responsible for transporting special needs children to elementary schools and daycare centers in Portsmouth, Dover and Kittery Point, Maine.  The three young victims in this case had the tragic misfortune of occupying a seat on one of these bus routes, hostages in the Defendant's care and at his mercy.

The Defendant's *modus operandi* was to isolate his young victims by manipulating pick-up and drop-off times to ensure that he was often alone on the bus with each boy for periods of time.  He took full advantage of his opportunities by perpetrating unspeakable acts of sexual abuse on these vulnerable and voiceless children.  Had the Defendant not surreptitiously recorded visual depictions of this sexual abuse, his conduct likely would have gone undetected by law enforcement.  In order to produce the visual depictions, the Defendant utilized sunglasses equipped with a battery and digital video camera that he procured through the online marketplace eBay, Inc.

---

[1] The government intends to submit, under seal, a DVD containing the videos for the Court's review before the sentencing hearing.

**John Doe 1**  (Counts I and II)

John Doe 1 is ▮▮▮▮▮▮, whose date of birth is ▮▮▮▮▮▮, making him four years-old when the Defendant sexually molested and exploited him.  According to his single mother Jamie, ▮▮▮ was diagnosed with autism at the age of two-and-a-half.  In January of 2010, at the age of three, he began attending a special education program at Woodman Park elementary school in Dover, receiving both speech and occupational therapy.  He was transported to school, and thereafter to daycare, by Provider bus.

The Defendant began transporting ▮▮▮ in or about April of 2010.  He would pick up ▮▮▮ at his home in the morning, drive him to school, pick him up again after school and drive him to daycare, where his mother would retrieve him at the end of her workday.  The Defendant created opportunities to sexually exploit ▮▮▮ by picking him up first on the way to school and dropping him off last at daycare.

Count I is based on a video file entitled "▮▮▮mnpp.avi."  The video is 3 minutes, 51 seconds in duration.  The sexual assault depicted in the video is accurately described at paragraph 19 of the Presentence Report (PSR) and need not be repeated here.

Count II is based on a video file entitled "▮▮▮tum.wmv."  The video is 2 minutes, 1 second in duration.  The sexual assault depicted in the video is accurately described at paragraph 20 of the PSR and need not be repeated here.

**John Doe 2**  (Counts III and IV)

John Doe 2 is ▮▮▮▮▮▮, whose date of birth is ▮▮▮▮▮▮, making him four or five years-old when the Defendant sexually molested and exploited him.  According to his parents, ▮▮▮ has been diagnosed with a form of autism known as Pervasive Developmental

Disorder, Not Otherwise Specified (PDD-NOS).  He was essentially non-verbal until the age of

four, when he began to utter single words that his parents could decipher.

      In early 2011, ▓▓▓▓ mother would bring him to daycare on weekday mornings.  Two

days per week, ▓▓▓▓ would be transported by Provider bus, driven by the Defendant, from

daycare to a special education program at Woodman Park elementary school in Dover.  At the

end of the school day, ▓▓▓▓ would be transported back to daycare by Provider bus, again driven

by the Defendant.

      According to employees of the daycare facility, the Defendant consistently dropped ▓▓▓▓

off 30 to 45 minutes late and he was often the only passenger on the bus.  When confronted

about his tardiness, the Defendant dissembled about delays due to heavy traffic or construction.

Tragically, the truth of the matter is that the Defendant used the time alone with ▓▓▓▓ to sexually

molest him.

      Count III is based on a video file entitled "▓▓▓▓awesome.avi."  The video is 3

minutes, 54 seconds in duration.  The sexual assault depicted in the video is accurately described

at paragraph 21 of the PSR and need not be repeated here.

      Count IV is based on a compilation video file entitled "▓▓▓▓.wmv."  The video is 4

minutes, 58 seconds in duration.   The sexual assaults depicted in this compilation video are

accurately described at paragraph 22 of the PSR and need not be repeated here.

**John Doe 3**  (Count V)

      John Doe 3 is ▓▓▓▓▓▓▓▓, whose date of birth is ▓▓▓▓▓▓▓▓, making

him eight years-old when the Defendant sexually molested and exploited him.  According to his

parents, ▓▓▓▓ has been diagnosed with severe autism and mild cerebral palsy.  He is completely

non-verbal.

The Defendant began transporting ▨ in July of 2011, when ▨ enrolled in a five-week summer program at the Horace Mitchell Primary School in Kittery, Maine.  The special education program hours were 8:00 am to 12:00 pm daily.  The Defendant was scheduled to pick up ▨ at home in the morning and return him home after school in the early afternoon.  However, it was not long before he was returning ▨ home 30 to 45 minutes late, causing ▨ frantic mother to call the school or Provider bus in search of her son.  When she confronted the Defendant directly, he dissembled about heavy traffic or delays caused by other children.  During this same timeframe, ▨ parents observed a change in his behavior, resisting diaper changes and acting in sexually inappropriate ways.  Given their concerns about the Defendant, ▨ parents removed him from the summer program after only two-and-a-half weeks.

Count V is based on a video file entitled "sunpohj001.avi."  The video is 21 minutes, 13 seconds in duration.  The sexual assault depicted in the video is accurately described at paragraph 23 of the PSR and need not be repeated here.  However, it should be noted that the video also depicts ▨'s mother helping him onto the bus and placing him in his car seat, unaware that the Defendant was surreptitiously recording her every move with his camera sunglasses. Little did ▨ mother know at the time, but now she must live with the agonizing knowledge, that soon thereafter her helpless child would be sexually exploited for the Defendant's twisted pleasure.

**Count VI**

On September 1, 2011, a search warrant authorizing the search and seizure of, inter alia, computer equipment and digital media containing evidence of child pornography was executed at the defendant's residence in Milton, New Hampshire.  The on-scene search of the computer system belonging to the defendant revealed the existence of a massive collection of suspected

child pornography.  A comprehensive, off-premises digital analysis of the equipment seized from

the defendant's residence revealed numerous video files produced by the defendant himself –

including those for which he was charged – together with thousands of images of suspected child

pornography – including no fewer than 3,650 images of known victims, all of which form the

basis for Count VI of the Indictment.

## THE SENTENCING GUIDELINES

Using the sentencing guidelines as "the starting point and initial benchmark" for

determining the appropriate sentence in this case, see Kimbrough v. United States, 552 U.S. 85,

108 (2007), the Defendant's advisory guideline sentencing range (GSR) is a life sentence.  Given

that Counts I and II, Counts III and IV, and Count V respectively involve three different victims

assaulted on five different dates, each charged offense constitutes a distinct and separate harm

precluded from grouping as closely related counts.  See USSG §2G2.1, cmt. n.5.  Similarly,

inasmuch as the Defendant's vast child pornography collection involves different children with

distinct and separate harms, Count VI is precluded from grouping as a closely related count.  See

id.  Therefore, the PSR's calculation of separate guidelines for each count and application of the

unit method is the appropriate methodology for determining the combined offense level.  See

USSG §3D1.4.

The calculation begins with a base offense level of 32 for each of Counts I through V and

a base offense level of 18 for Count VI.  Following the application of pertinent enhancements

based on specific offense characteristics, calculation of the combined adjusted offense level

using the unit method, and the adjustment for acceptance of responsibility, the total offense level

is 51.  In determining the GSR, an offense level of more than 43 is to be treated as an offense

level of 43.  See USSG ch. 5, pt. A, cmt. n.2.  At level 43, the recommended GSR is life in

prison regardless of criminal history category. See United States v. Goergen, 683 F.3d 1, 2 (1st Cir. 2012) (treating total offense level of 51 as offense level of 43).

There are no objections to the methodology employed in the PSR or the resulting GSR calculation.

## NO DOWNWARD DEPARTURE WARRANTED

The Defendant contends his purported "diminished capacity" may serve as the basis for a departure from the applicable guideline sentence under USSG §5K2.13. In support, he cites an evaluation performed at the Strafford County House of Corrections as a result of which he was diagnosed with, inter alia, a "Psychotic Disorder, NOS" and prescribed the anti-psychotic medication Perphenazine.

The Defendant subsequently was referred for a competency evaluation by a forensic psychologist, Dr. Shawn Channell, at the Federal Bureau of Prisons' Federal Medical Center (FMC) in Devens, Massachusetts. That evaluation revealed "gross exaggeration of mental health symptoms by the [D]efendant," who "does not meet criteria for the diagnosis of psychotic disorder."

In any event, a departure below the guideline range for a significantly reduced mental capacity is prohibited when the Defendant has been convicted of an offense under chapter 110 of title 18, as the Defendant has been here.[2] See USSG §5K2.13, Diminished Capacity (Policy Statement).

## STATUTORY SENTENCES

Each of Counts I through V carry a minimum mandatory sentence of 15 years and a maximum sentence of 30 years. See 18 U.S.C. §2251(a) and (e). Count VI carries a maximum sentence of 10 years. See 18 U.S.C. §2252A(a)(5)(B) and (b)(2). Accordingly, because the

---

[2] Chapter 110 encompasses 18 U.S.C. §§2251(a) and 2252A (a)(5)(B).

highest statutory maximum sentence on any count of conviction is 30 years, which is less than the total GSR punishment of a life sentence, then the sentences for multiple counts must run consecutively to the extent necessary to produce a combined sentence equal to the total punishment.  <u>See</u> USSG §5G1.2(d).  Thus, the Defendant's GSR is 160 years, representing maximum thirty (30) year terms of incarceration imposed on each of the five convictions for sexual exploitation of children, and a maximum ten (10) year term of incarceration imposed on the conviction for possession of child pornography, each term of incarceration to be served consecutively.  <u>See</u>, <u>e.g.</u>, <u>United States v. Johnson</u>, 451 F.3d 1239, 1241-42 (11th Cir. 2006) (applying USSG §5G1.2(d) to impose consecutive statutory maximum sentences totaling 140 years in order to reach a guideline sentence of life).

<b><u>SENTENCING FACTORS</u></b>

A sentencing court's decision to impose the maximum sentence allowed by law does not automatically make that sentence unreasonable.  <u>United States v. Leahy</u>, 668 F.3d 18, 24 (1st Cir. 2012).  A sentencing court should evaluate the sentencing factors set forth in 18 U.S.C. §3553(a) and quantify that evaluation in a sentence that is fair, just, and in accordance with law.  <u>Id</u>. (internal quotation marks omitted).  Analysis of those sentencing factors under the circumstances of this case leads inexorably to the conclusion that a sentence of 160 years, while severe, is fair, just and substantively reasonable.

**<u>18 U.S.C. §3553(a)(1)</u> – Nature of Offenses and Defendant's Characteristics**

As the government avers in the Introduction to this memorandum, considering the nature and circumstances of these offenses – including the tender ages of the victims, their concomitant afflictions and vulnerabilities, and the predatory character of the crimes – it is difficult to conceive of a commensurate sentence that is either sufficient or greater than necessary to achieve

the well-established goals of sentencing.  The Defendant's conduct in coercing these young boys

to engage in sexually explicit conduct for his own sexual gratification is egregious enough to

warrant a substantial sentence.  See Goergen, 683 F.3d at 5-6 (rejecting defendant's claim in

support of leniency in child abuse cases).  That he surreptitiously produced visual depictions of

his egregious conduct only augments the severity of his crimes.[3]

      But what sets this case apart and far outside the heartland of similar child sex crimes are

two salient facts.  First, these young victims were virtual prisoners on the Defendant's bus,

susceptible to his prurient whim and caprice.  They, and no less their parents, were utterly

dependent on him for their care and safe passage to and from school or daycare.  Instead, the

Defendant personified every parent's nightmare: a sexual predator into whose hands these

parents unwittingly surrendered their precious children, all of whom – parents and children –

likely will be forever damaged by the experience.

      Second, these young victims were prisoners of their own disabilities as well.  As the

videos illustrate, their disabilities did not prevent them from feeling pain or discomfort, or from

attempting to resist the Defendant's sadistic torture.  However, given their inability to speak,

they were unable to articulate to their parents or teachers what was happening to them.  They

were unable to clearly express the fear and trepidation they must have felt as they boarded the

Defendant's bus on a daily basis.  The Defendant well knew this and he not only exploited these

children sexually, he also exploited their disabilities as a means to do so.

      These aggravating factors shock the conscience to such a degree that any anticipated

mitigating factors – such as the Defendant's self-reported physical abuse at his father's hands,

his military service, from which he was honorably discharged but barred from re-enlistment, and

---

[3] There is no evidence that the Defendant distributed these visual depictions.  Presumably, then, he produced them for his own voyeuristic pleasure.

his long-term, voluntary abuse of alcohol and drugs – pale by comparison. The Defendant is simply unable to adduce the type of "powerful mitigating reason[s]" to warrant either a variance or the conclusion that the maximum but within guideline sentence of 160 years is substantively unreasonable. See United States v. Beatty, 538 F.3d 8, 17 (1st Cir. 2008).

**18 U.S.C. §3553(a)(2)(A) – Seriousness of Offense/Respect for Law/Just Punishment**

The recommended 160-year sentence reflects the gravity of the Defendant's offenses and promotes respect for the law. See United States v. Sarras, 575 F.3d 1191, 1220 (11th Cir. 2009) (observing that "child sex crimes are among the most egregious and despicable of societal and criminal offenses"). Insofar as "just punishment" is concerned, Courts have imposed similarly severe sentences in like circumstances. See, e.g., Johnson, 451 F.3d at 1244 (upholding as substantively reasonable a sentence of 140 years on two counts of production and one count of distribution of child pornography); Sarras, 575 F.3d at 1221 (upholding as substantively reasonable a sentence of 100 years on three counts of production and one count of possession of child pornography); United States v. Betcher, 534 F.3d 820, 827-28 (8th Cir. 2008) (upholding as substantively reasonable a sentence of 750 years for first-time offender on, inter alia, 24 counts of production of child pornography); United States v. Vowell, 516 F.3d 503, 512 (6th Cir. 2008) (upholding as substantively reasonable a sentence of 65 years on one count of production and one count of possession of child pornography); Goergen, 683 F.3d at 5-6 (upholding as substantively reasonable a sentence of 60 years on four counts of production of child pornography; United States v. Paton, 535 F.3d 829, 837-38 (8th Cir. 2008) (rejecting defendant's claim that life sentence on each of five counts of production of child pornography was grossly disproportionate or cruel and unusual punishment in violation of the Eighth Amendment).

Commenting on the 750 year sentence imposed by the district court in <u>Betcher</u>, the Eighth Circuit observed that it was, for practical purposes, a life sentence and "[t]he absurdity of a 750 year sentence, or even a 10,000 year sentence, should not detract from the gravity of [the defendant's] crimes." 534 F.3d at 828. The same holds true both for the crimes committed by the Defendant and the recommended 160 year sentence.

**<u>18 U.S.C. §3553(a)(2)(B)</u> – Adequate Deterrence**

Deterrence is widely recognized as an important factor in the sentencing calculus. <u>United States v. Flores-Machicote</u>, 2013 U.S. App. LEXIS 1565, 11 (1st Cir. 2013) (<u>citing</u> 18 U.S.C. 3553(a)(2)(B)). It aims to prevent criminal behavior by the population at large and incorporates some consideration of persons beyond the Defendant. <u>Id</u>. at 12. Thus, the incidence of particular crimes in the relevant community appropriately informs and contextualizes the relevant need for deterrence. <u>Id</u>.

It is indisputable that the incidence of child sexual exploitation crimes here in the District of New Hampshire, and elsewhere, has increased intolerably. In the last four years alone, defendants convicted of producing child pornography have been sentenced in this Honorable Court to *20 years* in prison, <u>see</u>, <u>e.g.</u>, <u>United States v. Silva</u>, 08-CR-75-01-JD (July, 2009) and <u>United States v. Murphy</u>, 09-CR-144-01-PB (June, 2010);[4] *40 years* in prison, <u>see</u>, <u>e.g.</u>, <u>United States v. Pace</u>, 08-CR-59-01-SM (August, 2009) and <u>United States v. Johnston</u>, 09-CR-148-01-PB (May, 2010); *50 years* in prison, <u>see</u>, <u>e.g.</u>, <u>United States v. Stewart</u>, 1:11-cr-00136-PB (January, 2012); and *60 years* in prison, <u>see</u>, <u>e.g.</u>, <u>Goergen</u>, 10-CR-117-01-JD (January, 2011). While all these cases are very serious and warranted the severe punishment imposed, none of them resembled the especially heinous and aggravated nature of the Defendant's crimes in this

---

[4] Unlike this case, neither of these defendants sexually assaulted their victim in the process of producing child pornography.

case.  See Flores-Machicote, 2013 U.S. App LEXIS at 13 (observing that judges are entitled to view certain types of crimes as particularly heinous and impose a sentence that promotes a heightened level of deterrence).

The recommended sentence of 160 years will not only promote respect for the law prohibiting the sexual exploitation of children but it will also afford adequate deterrence to those who would contemplate a similar violation of that prohibition.

**18 U.S.C. §3553(a)(2)(C) – Public Protection**

The Defendant is demonstrably a pernicious threat to one of the most vulnerable populations in our community – young children.  Moreover, he is demonstrably a pernicious threat to a vulnerable population within that subgroup – young, disabled children.  A life sentence of 160 years will ensure his incapacitation and place those vulnerable young children beyond his reach forever.  See Betcher, 534 F.3d at 828 (emphasizing incapacitation as a factor in imposing 750 year sentence); Vowell, 516 F.3d at 512 (reasoning that significant term of incarceration is necessary to ensure defendant's permanent segregation from children). Therefore, the recommended sentence of 160 years is necessary to protect the public from any further criminal activity by the Defendant.

**18 U.S.C. §3553(a)(2)(D) – Correctional Treatment**

In light of the grievous nature of his crimes, the Defendant is desperately in need of extensive treatment in the most appropriate correctional setting available.  The recommended sentence will ensure that he receives that necessary long-term treatment in the appropriate correctional setting.

**NO VARIANCE WARRANTED**

In any given case, there is no single reasonable sentence but, rather, a range of reasonable sentences.  Leahy, 668 F.3d at 25.  Within that universe, the sentencing court has considerable latitude to select the punishment that best fits the criminal and the crime.  Id.  The government respectfully submits that its recommended sentence of 160 years is the only sentence that truly fits the Defendant and his crimes.  Cases like Goergen (60 years), Vowell (65 years), Sarras (100 years), Johnson (140 years), and Betcher (750 years) lend compelling support to this position, which also eschews any unwanted sentencing disparity among similarly situated defendants.  See 18 U.S.C. §3553(a)(6).

Where, as here, the Defendant used and coerced three developmentally disabled young boys riding aboard his school bus to engage in sexually explicit conduct that he surreptitiously recorded, and compounded these crimes by downloading thousands of graphic images of other young children being raped and tortured, there is no evidence to warrant either a variance or the conclusion that the maximum but within guideline sentence of 160 years is substantively unreasonable.  See Beatty, 538 F.3d at 17.

**CONCLUSION**

Considering the advisory GSR of a life sentence in light of the statutory sentences and the §3553(a) factors, the government respectfully requests that this Honorable Court sentence the Defendant to a term of imprisonment of 160 years.

Respectfully submitted,
JOHN P. KACAVAS
United States Attorney


Dated: February 8, 2013                         By: /s/ John P. Kacavas
                                                John P. Kacavas
                                                United States Attorney
                                                Bar No: 8177
                                                53 Pleasant Street
                                                Concord, New Hampshire 03301



                                                Respectfully submitted,



                                                By: /s/ Helen Fitzgibbon
                                                Assistant United States Attorney
                                                Bar No: 6833
                                                53 Pleasant Street
                                                Concord, New Hampshire 03301



CERTIFICATE OF SERVICE

    I, hereby, certify that the Government's Sentencing Memorandum and Objection to
Defendant's Motion for Departure or Variance Filed Under Seal Pursuant to 18 U.S.C. § 3509
(d)(2) have been served electronically, through ECF, on Harry N. Starbranch, Jr., Esquire, 171
Middle Street, Portsmouth, New Hampshire, 03801 counsel for the defendant this 8th day of
February, 2013

                                                By: /s/ John P. Kacavas
                                                John P. Kacavas

14